## Alonzo Allen *vs*. The Boston and Maine Railroad.

### York.    Opinion December 3, 1900.

*Negligence.    Verdict.    Railroads.*

Whether the injury received by plaintiff was caused by the negligence of the defendant, without fault on the part of the plaintiff, is an issue to be submitted to the jury.

Where the evidence is conflicting, and the jury find the issue in favor of the plaintiff, and it may be that the court would have arrived at a different conclusion, yet the court is not at liberty to substitute its judgment for that of the jury, which is the constitutional tribunal to determine the facts, there being no suggestion of bias or undue influence on their part, and the evidence being such that different minds might reach different conclusions.

The rule that a rapidly moving train has a precedence, over the traveler, at a crossing on the highway, does not apply to stationary trains. As to these, neither has precedence, but each should act with due regard to the other, the right of passage being equal to each.

On Motion by Defendant.

The facts appear in the opinion.

*E. P. Spinney*, for plaintiff.

Trainmen must keep sharp lookout to avoid collisions at crossings, and it is the duty of trainmen to avoid a collision if they can.

It is the duty of both engineer and fireman to keep a lookout ahead of their locomotive.

If the employees of a railroad company, whose duty it is to watch the tracks, fail to discover the peril of persons at a crossing, when reasonable attention would have enabled them to do so in time to have prevented the infliction of injury, the company is liable. *Purinton* v. *M. C. R. R. Co.*, 78 Maine, 569; *Garland* v. *M. C. R. R. Co.*, 85 Maine, 519; 4 Am. & Eng. Ency. of Law, p. 909, et seq. and cases.

In *Webb* v. *P. & K. R. R. Co.*, 57 Maine, 117, the following was deemed negligence: "The engineer in charge testifying that he did not see Webb's team until the engine was within ten feet of him, and that the brakeman who was looking out on the side from

which Webb was approaching, gave him (the engineer) no notice."

New trial: A verdict should not be set aside as against evidence, where there is evidence, on both sides, unless in extraordinary cases, where it is manifest that the jury have mistaken or abused their trust, and the verdict is manifestly against the weight of evidence and glaringly erroneous. *Weld* v. *Chadbourne*, 37 Maine, 227; *Tower* v. *Haslam*, 84 Maine, 86; *Dodge* v. *Dodge*, 86 Maine, 393.

In *Dodge* v. *Dodge*, above cited, where much of the evidence was irrelevant and contradictory, the court said: "The weight of evidence depends upon the intelligence, the character, and credibility of the witnesses."

The question of negligence, even in cases where the facts are undisputed, and where intelligent and fair-minded men may reasonably arrive at different conclusions, is for the jury. *Rhoades* v. *Varney*, 91 Maine, 226; *Elwell* v. *Hacker*, 86 Maine, 416; *Nugent* v. *B. C. & M. R. R.*, 80 Maine, 62.

New trial not granted because court would have drawn different inferences, and arrived at a different conclusion; and the court can not substitute its judgment for that of the jury. *Hill* v. *Nash*, 41 Maine, 585; *Elliott* v. *Grant*, 59 Maine, 419; *Lowell* v. *Newport*, 66 Maine, 78; *Parks* v. *Libby*, 92 Maine, 133.

Where the evidence is conflicting upon points vital to the result, a verdict will not be reversed, unless the preponderance against it is such as to amount to a moral certainty that the jury erred. *Enfield* v. *Buswell*, 62 Maine, 128; *Hunter* v. *Heath*, 67 Maine, 507; *Smith* v *Brunswick*, 80 Maine, 192.

*G. C. Yeaton*, for defendant.

While it has sometimes been judicially held that the right of neither the traveler along the highways nor the railroad company at crossings was superior to that of the other, it has also been many times declared that, in the exercise and enjoyment of these rights, the railroad must necessarily have precedence. *Lesan* v. *M. C. R. R.*, 77 Maine, 85, 89, 90; *Smith* v. *M. C. R. R.*, 87 Maine, 339, 347, and cases cited.

And many well-considered cases have held that "in this particu-

lar" the right of the traveler was "subordinate." *Newhard* v. *Penn. R. R. Co.*, 153 Penn. St. 417, 421; *Ohio & Miss. Ry. Co.* v. *Walker*, 113 Ind. 196; *Black* v. *Bur. C. R. & M. Ry. Co.*, 38 Iowa, 515; *Conkling* v. *Erie R. R. Co.* (N. J. Law, June, 1899); *Morris* v. *Chic. M. & St. P.*, 26 Fed. Rep. 22.

Was it the latter? Quite as clearly, and nearly as often, have courts refused redress to those who choose to take such visible risk. *Merrigan* v. *B. & A. R. R.*, 154 Mass. 189, 191; *Chic., etc., R. R. Co.* v. *Houston*, 95 U. S. 697; *Smith* v. *M. C. R. R.*, 87 Maine, 339, 351, 352; *Mott* v. *Detroit, G. H. & M. Ry. Co.* (Mich. May 9, 1899), 15 Am. & Eng. R. R. Cases, 113; *No. Pac. R. R. Co.* v. *Freeman*, 174 U. S. 379, 384.

Where then was plaintiff's due care? Applying perfectly well-settled principles of law to facts, as plaintiff discloses them, can this conclusion be escaped?

Returning home with an empty, open, farm wagon, he rashly and needlessly rushed a dull horse laterally off a planked crossing as he attempted to hurry through a railroad freight yard, with which he was entirely familiar, at a time when cars were being shifted in and out over it, and precisely when he saw a locomotive with two cars coupled to it "kick" a third toward a house-track, and stop only twenty feet away; then, when fully committed to the foolhardy enterprise, he perceived the locomotive again coming toward him, instead of himself stopping until it had gone past, still pushes on, "urging" his horse, until, in his self-invited panic, he swings his wagon wheel clear of the planking, though inside the rail, and was tilted out. In every logical and legal sense all he has suffered therefrom has arisen solely from, and must remain chargeable to, his own negligent want of ordinary care.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

STROUT, J. Plaintiff had a verdict for injuries sustained at a highway crossing of defendant in North Berwick. We are asked to set it aside as against evidence.

At the place of the accident there were six tracks, where trains were made up. It was broad daylight. A freight train had crossed the highway, and stopped within twenty or thirty feet of the crossing on · the northerly track, the locomotive heading towards the highway. The conductor left his cab and went to the rear of the train to unshackle a car. Plaintiff was approaching from the southerly side, in plain sight of the train, but was not seen by the engineer till his horse's head was "right out by the forward end of the engine," when he put on the brake. The engineer was on the side of the engine farthest from the plaintiff as he approached, and when seen by him, the horse must have been well over the crossing.

The engineer says that when he had passed the crossing to leave a car, he stopped the locomotive, and immediately started forward toward the crossing. Plaintiff says it stopped a minute or so while a car was unshackled, and as he was about crossing, the engine started without warning — the trainmen say the bell was rung. The planking at the crossing was seventeen to nineteen feet wide. The engineer says the engine was stopped when it had lapped on the planking about two feet—plaintiff says it did not stop till it had entirely passed the planking. His horse was not afraid of locomotives; neither horse nor wagon was struck. Apparently the accident happened by the horse swerving away from the locomotive, beyond the planking, and the carriage wheel cramping on the rail and throwing plaintiff out. The horse and carriage passed over the track clear of the locomotive. Defendant claims that plaintiff was negligent in attempting to cross the track when he did; while plaintiff claims that the locomotive being stationary he had a right to cross, and that the engineer should not have started while he was on, or evidently attempting to pass over, the crossing.

If plaintiff was seen by the engineer in his attempt to cross (and it is · difficult to see why he was not) and while the engine was stationary, it would be a fault to start it, even if the plaintiff was negligent in making his attempt. If thus stationary, it is claimed plaintiff was justified in believing that it would not start while he was passing, he being then in close proximity to the crossing.

The rule that a rapidly moving train has precedence, at a cross-

ing, over the traveler on a highway, does not apply to stationary trains. As to these, neither has precedence, but each should act with due regard to the other, the right of passage being equal to each.

All these questions were submitted to the jury, under instructions not excepted to, and they have found the defendants guilty of negligence, and that the plaintiff was not guilty.

It may be that the court would have arrived at a different conclusion, if called upon to pass upon the facts. But the constitutional tribunal for the determination of facts having found the issues in favor of the plaintiff, and there being no suggestion of bias or undue influence on their part, and the evidence being such that different minds might reach different conclusions, we do not feel authorized to disturb the verdict.

*Motion overruled.*